## M'COMBS *vs.* DUNBAR ET ALS.

### APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF WEST FELICIANA.

Whether the plaintiff claims the thing, or the price that represents it, the rule is the same as to damages.

Any evidence which establishes a right to have them reduced, although it does not come under the head of compensation or payment, is admissible.

The District Court cannot entertain jurisdiction of a suit, to annul the judgment of a Court of Probates, appointing an administrator to an estate.

William Dunbar, the husband of the plaintiff, died intestate, leaving three minor children, his only legitimate forced heirs, and certain property, in the parish of West Feliciana.

The plaintiff, as widow in community, and as natural tutrix to her minor children, by the advice of a family meeting legally convoked, accepted the succession with benefit of inventory. Subsequent to these proceedings, and within the delay allowed by law for deliberating, A. Dunbar, one of the defendants, was appointed administrator of the succession, and caused the property belonging thereto, to be sold, by virtue of an order of the Court of Probates, at which sale, James Dunbar became the purchaser.

The petition charged, that all these proceedings were illegal and null, and concluded with a prayer, that the

appointment of A. Dunbar, as administrator, might be avoided and set aside, and the defendants decreed to deliver up the property. A. Dunbar, pleaded the general issue, against whom the proceedings appear to have been carried on, as the other defendant did not answer, and no judgment by default was taken against him.

The court below, gave judgment for the plaintiff, for the balance due, on charging the defendant with the amount which the property produced at auction, and crediting him with the payments made by him as administrator. From this judgment the defendant appealed.

*Turner*, for appellants.   *Downs*, for appellee.

*Porter, J.* delivered the opinion of the court.

The petitioner states that she is widow of the late William Dunbar, and tutrix to his children ; that he died in the year 1828, leaving property moveable and immoveable ; that she accepted the succession, on behalf of the minors, with the benefit of an inventory, by and with the advice of a family meeting ; and also, accepted the community of acquests and gains, under the benefit of an inventory. That, in virtue of these proceedings, she is and was entitled to the administration of the succession of her minor children, and of the community which existed between her, and her deceased husband.

But, notwithstanding these premises, A. Dunbar caused proceedings to be instituted, by which he was appointed administrator of the estate. That, in this capacity, he caused all the moveable, and immoveable property of the succession to be sold. That at this sale, he and his brother James Dunbar, acting together, became the purchasers of a large portion of this property ; that, by so doing, they deprived the petitioner of the possession thereof—the use of the common dwelling for herself and children, and the means of procuring mourning dresses during her year of mourning.

The petition charges the whole of these acts to be illegal, and null, and avers, that the petitioner has demanded the

property, or the value thereof, from the defendants, which demand they have refused.

EASTERN DIST.
March, 1832.

It concludes with a prayer that they may be cited. That the appointment of A. Dunbar, as administrator, and all the proceedings which flowed from it, be avoided and set aside. That the purchases made at the sale of the estate, by A. Dunbar and James Dunbar, be declared illegal and void; and that they be decreed to deliver up all the moveable and immoveable property, so acquired by them, or the value of all that portion of it which does not exist in kind, together with rent for the land and wages for the slaves.

M'COMBS
vs.
DUNBAR ET ALS.

A. Dunbar, answered by pleading the general issue. He further averred, that his appointment was legal and his acts under it valid. That the proceedings were beneficial to the estate. That he has faithfully administered, as his account annexed will show. That he has a right to retain obligations yet due the estate, and now in his hands, to reimburse him for his advances, or that the plaintiffs be decreed to pay the amount due to him. He further prayed that his account, as administrator, should be confirmed.

No answer was put in by the other defendant, James Dunbar, and judgment by default was not taken against him.

The jurisdiction of our Probate and District Courts, so run into each other, and it is so difficult to mark, clearly and satisfactorily, the limits which separate them by legislative enactment, or by the recognition of general rules on the part of the court, that we can only expect to see their boundaries plainly ascertained, after a jurisprudence is formed on a great number of particular cases. It is not surprising, at the present time, that counsel should be often perplexed in forming a judgment in relation to the proper tribunal to which they are to address their clients, or that courts should be embarrassed in deciding in relation to their competency.

This case came first before us, on an appeal from the District Court. We hold it had not jurisdiction. The petition required the judgment of the Probate Court, appointing the defendant administrator, to be annulled, and to withdraw property, received by him in that capacity, out of his possession.

The District Court cannot entertain jurisdiction of a suit, to annul the judgment of a Court of Probates, appointing an administrator to an estate.

Such a decree, we thought, could not be made in a court of ordinary jurisdiction, the appointment of the Probate Court standing unreversed, and the estate then being in course of administration. On a deliberate view of that opinion, now made, we think it correct. But we notice it particularly, from an apprehension that its principles may be mistaken by others, as we suspect they were in the first instance by the plaintiff. In the action brought in the District Court, there was joined, as defendant with the administrator, a third person, who had purchased property at the probate sale. But who, in doing so, became in no way amenable to its jurisdiction, in relation to the title acquired by that purchase, and against whom an action in revindication by the owners could only be brought in the ordinary courts. It was considered, however, that as his right depended, under the pleadings, on the validity of the appointment in the Probate Court of the administrator, it was necessary to remove this bar before he could be reached, because a decision on his title could not be made, without passing on the validity of the administrator's appointment.

On going before the court of Probates, the plaintiff supposed, that because suit could not be maintained against the administrator, and a third person, in the court of ordinary jurisdiction, it followed an action could lie against them both in the Probate tribunal. But this court did not intend to convey such an idea. It considered the appointment of the administrator standing unreversed, an insuperable obstacle to an action in another court to obtain the property, on the ground that he was not legally administrator. It did not enter into the view, we took of the subject, that suit could be maintained in the Probate Court against a purchaser at a sale, made under its authority, by the heir or any one else setting up a title adverse or paramount to the right acquired by that purchase. The tribunal for such an investigation, in our opinion, is one possessing ordinary jurisdiction. Hence, we conclude that resort was necessary in this case to both courts, to enable the plaintiff to recover the property. To the court of Probates, in the first instance, which, under the Code of Practice, had alone the right to examine into the validity of its own

appointment. If successful there, suit might have then been instituted in the District Court to get back the property. Neither court, in our judgment, was alone empowered to give the plaintiff the relief he sought.

The failure to prosecute the suit against James Dunbar, as will be hereafter seen, leads to the same result in this action, as the opinion we have expressed, in relation to this jurisdiction, would, and we notice this question merely in the hope that our observations may aid somewhat in preventing difficulties in cases similarly circumstanced hereafter.

The Probate Court gave judgment in favor of the plaintiff for the balance due, on charging the defendant with the amount which the property produced at auction, and crediting him with the payment made by him as administrator. He appealed; and contends here, that the balance, which the judge considered due, is larger than the evidence authorises.

The appellee denies this, and has further prayed the judgment may be so amended, as to compel the defendant to restore the land and slaves, claimed in the petition.

This question was considerably discussed on the argument, but it appears to us free from much difficulty. The real estate and slaves were not purchased by the defendant, and if it be true, as was contended, that although nominally bought by another, the acquisition was on his account; still the sale cannot be annulled, nor delivery of the property decreed, in a suit in which the vendee is not a party. The suit was originally directed against both, but the proceedings appear to have been dropped against James Dunbar, before issue was joined, and he cannot be considered before the court.

The facts of the case show, that the administrator caused the sale of the property to be made before the time, granted by law to the tutor for deliberation, had expired. The appellee assumes this sale to be null; and she requires the administrator to pay the rent of the land, and hire for the slaves, thus illegally alienated.

The vendee, as has been already stated, is not before us, and the sale cannot be decreed null in an action to which he

66

is not a party.   But the illegality of the acts of the administrator are a proper subject for our consideration ; and we are of opinion the sale was made under circumstances which the law did not sanction.   This conclusion necessarily leads to another, that he is responsible for the damages occasioned by his illegal act.

But on looking into the record for the evidence of these damages, we do not find them proved.   The appraised value of the estate was two thousand nine hundred and thirty-six dollars and twenty-five cents.   The debts established before the court of Probates, and allowed by the judge, were three thousand seven hundred and thirty-six dollars and fifteen cents.   The administrator contends they were more.   Admitting they were not, the sale of the property was necessary. At this sale, the prices were so much higher than the appraised value, as to exclude all idea of injury resulting to the heirs from the alienation.

At the trial, the defendant offered his account and vouchers, in support of the allegation in his answer, of having fully administered.   This evidence was objected to, on the ground of the suit being for the property in kind, or for the value thereof, if it could not be restored in kind, together with the rents and profits of the real estate.

*Whether the plaintiff claims the thing, or the price that represents it, the rule is the same as to damages.*

We have already seen, that the property cannot be restored in kind, as the person in whom the legal title is vested, is not before the court.   The action, therefore, resolves itself into a claim for the price and damages.   In either hypothesis, we think the evidence legal to diminish the amount the plaintiff would otherwise be entitled to.   If the plaintiff sued the third possessor for property, the price of which had been applied to the payment of the debts of the estate, she could not receive it without returning the money paid for her use and benefit, or for the use and benefit of those she represents. We cannot distinguish when she sues for the price which represents the thing.   And, in relation to damages, any evidence, which establishes a right in the defendant to have them reduced, though it does not or cannot fall under the heads of compensation, or payment, is legally admissible.   The rules,

*Any evidence which establishes a right to have them reduced, although it does not come under the head of compensation or payment, is admissible.*

applicable to these modes of extinguishing a *debt*, do not apply to cases of this kind, where the law raises the obligation from the act of the party, independent of his will; for the law raises it only for that which, *ex æquo et bono*, is really due.

EASTERN DIST.
*March,* 1832.

M'COMBS
*vs.*
DUNBAR ET ALS.

Another bill of exceptions was taken to the right of the defendant to offer accounts, and the vouchers in support of them, in evidence, the payment of which had not been ordered by the Judge of Probates. This objection, we think, is founded on a misapprehension of the purpose of the law, in requiring the order, and attempts to carry the penalty for non-compliance with it, beyond the intention of the legislature. The object contemplated was to secure to all creditors an equal share, if the estate was insolvent, and to enable those having privileges, &c. to be paid according to their rank, consequently no representative of an estate, can safely pay a creditor, without the sanction of the judge; for if he does, and higher claims thereafter appear, or there should not be enough to satisfy all, he will be responsible personally for the injury those creditors may sustain from his illegal act. But the heir has no cause of complaint, if a just debt be paid; his obligations do not depend on the judge's order, or the want of it; they arise from the contract of the ancestor.

The defendant has contended that no objection could be made to his account, at the trial, because exceptions were not put in three days after it was filed. This rule applies to cases where administrators are regularly appointed, and are called, on in due course of proceeding, to render their accounts. It ought not, and, in our opinion, does not extend to a case of this kind, where the payments made are presented and received in diminution of a demand, growing out of illegal and irregular acts on the part of the administrator.

The appellant has contended, there is error in the judgment of the Probate Court in charging the defendant with the sum of five hundred dollars, received during the life-time of the intestate, on his account. This is a matter of fact, depending on the credit due to witnesses and other circumstances, of which the court below had better means of forming a correct opinion than we possess. We have examined as

EASTERN DIST.
April, 1832.

attentively as in our power, the evidence as it appears on record, and though it does raise a serious doubt as to the correctness of the conclusions of the judge below, we are unable to say, it so clearly establishes error in his decision as authorises us to reverse it.

But we think the court erred in assuming the amount of the proceeds of the sale of the estate to be four thousand seven hundred and seventy-one dollars and four cents. We have made the calculation more than once, and can obtain no other result but four thousand seven hundred and six dollars and fifty-four cents. This makes a difference of sixty-four dollars and fifty cents in favor of the appellant.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Probate Court be annulled, avoided and reversed: And it is further ordered, adjudged and decreed, that the plaintiff do recover of the defendant the sum of eight hundred and ninety-eight dollars and twenty-seven cents, with costs in the court below; those of appeal to be borne by the appellees.